HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MILCIADES JOSE OSORIO MOLINA,

Petitioner,

v.

LAURA HERMOSILLO, *et al.*,

Respondents.

CASE NO. 2:26-cv-00095-RAJ

ORDER

## I. INTRODUCTION

THIS MATTER comes before the Court on Petitioner Milciades Jose Osorio Molina's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the petition, the submissions in support of and in opposition to the petition, and the balance of the record. For the reasons set forth below, the Court **GRANTS** Mr. Osorio's petition.

## II. BACKGROUND

Mr. Osorio is a citizen of Venezuela who came to the United States to seek asylum. Dkt. # 1 ¶ 1. On or around September 23, 2023, Mr. Osorio entered the United States and reported to border patrol. *Id.* ¶¶ 1–2; Dkt. # 5 ¶ 4. After a brief detention, he was released on an order of recognizance ("OREC"). Dkt. # 1 ¶ 2; Dkt. # 5 ¶ 4. The OREC stated that Mr. Osorio must "report for any hearing or interview as directed," but did not list any

specific date or location where he must report. Dkt. # 6-3 at 2. On March 18, 2024, Mr. Osorio appeared for his first scheduled master calendar hearing with an immigration court in Newark, New Jersey without incident. Dkt. # 5 ¶ 5. Later that year, he successfully moved the immigration court to transfer his case to Seattle, Washington because he was relocating to that area. *Id.* ¶ 6. It appears from the record that from his entry into the United States until his recent detention, Mr. Osorio lived in the community without incident. *See* Dkt. # 1 ¶ 25–26. He has no criminal history in the United States and fully complied with all hearings, filing deadlines, and other requirements. *Id.*

On December 24, 2025 (Christmas Eve), Immigration and Customs Enforcement ("ICE") officers arrested Mr. Osorio while he was loading groceries into his car in a grocery store parking lot. Dkt. # 1 ¶ 3. Mr. Osorio did not receive any written notice explaining the basis for detention or a hearing prior to his arrest. *Id.* ¶ 4. At the time of his arrest, ICE officers stated he was being detained because he did not properly notify ICE of his change in address. Dkt. # 1 ¶ 24. Respondents now state Mr. Osorio was arrested and his OREC revoked because he violated his reporting condition by failing to report since his release in 2023. Dkt. # 5 ¶ 7.

## III. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## IV. DISCUSSION

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The

fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v.* Brewer, 408 U.S. 471, 481 (1972)). It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context. *Id.* at 1207. District courts have subsequently applied the *Mathews* test in this manner. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). The parties agree that it applies here. Dkt. # 1 ¶ 37; Dkt. 4 at 6.

As an initial matter, the Court rejects Respondents' argument that Mr. Osorio's re-detention is lawful because the applicable statute and regulation do not require a pre-

detention hearing.[1] As multiple courts in this district have found in similar cases, "even if a particular statute or regulation does not require a pre-arrest hearing in these specific circumstances, this does not mean such a hearing is not required by Due Process." *Gregorio Ordoñez v. Bondi*, No. 25-cv-2356, 2025 WL 3852444, at *4 (W.D. Wash. Dec. 19, 2025), *report and recommendation adopted*, 2026 WL 30022 (W.D. Wash. Jan. 5, 2026); *see E.A. T.-B.*, 795 F. Supp. 3d at 1323 ("But Petitioner does not claim to be entitled to a hearing consistent with a particular statute: he argues that the Due Process Clause requires it."); *P.T. v. Hermosillo*, No. 25-cv-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected."); *Francois v. Wamsley*, No. 25-cv-2122, 2025 WL 3063251, at *3 (W.D. Wash. Nov. 3, 2025) ("Any argument that ICE acted within its authority has no [effect] on a claim contending that detention violates Constitutional Due Process."); *Kumar v. Wamsley*, No. 25-cv-1772, 2025 WL 2677089, at *2 n.2 (W.D. Wash. Sept. 17, 2025) ("Because Petitioner claims he was detained in violation of his constitutional right to due process, Respondents' contention that 'ICE acted within its lawful authority' . . . does not affect Petitioner's likelihood of success on the merits for his constitutional due process claim.").

Turning to the first *Mathews* factor, Mr. Osorio has a strong interest in not being detained. The "interest in being free from physical detention by one's own government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government

[1] Respondents state Mr. Osorio is mandatorily detained pursuant to 8 U.S.C. § 1225(b) and Mr. Osorio does not dispute this characterization in his traverse. Dkt. # 4 at 5; *see generally* Dkt. # 7. The Court need not reach the question of whether Mr. Osorio is detained pursuant to 8 U.S.C. § 1225 or § 1226 because in either case, the statute cannot replace the constitutional requirement of procedural due process. *See Herrera Gomez v. Wamsley*, No. 25-cv-2642, 2026 WL 279966, at *3 (W.D. Wash. Feb. 3, 2026) ("In the alternative, the Court finds that the due process requirements articulated in this order apply regardless of whether [petitioner] is detained under Section 1225(b) or 1226(a).").

custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [due process] protects."). "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). "Recently, courts throughout the Ninth Circuit have concluded that non-citizens who are released from ICE custody have a protected liberty interest under the Due Process Clause in remaining out of custody while their cases proceed." *Kumar*, 2025 WL 2677089, at *3 & n.3 (collecting cases).

Respondents argue Mr. Osorio has a diminished liberty interest because "liberty interests of U.S. citizens and [noncitizens] are not coextensive." Dkt. # 4 at 7 (citing *Rodriguez Diaz*, 53 F.4th at 1206). However, "[w]hile Respondents are correct that non-citizens' liberty interests are not equivalent to those enjoyed by citizens . . . that does not negate Petitioner's liberty interest in not being detained." *Kumar*, 2025 WL 2677089, at *3. Respondents also argue that Mr. Osorio's OREC "explicitly states that it can be revoked at any time." Dkt. # 4 at 8. However, "[t]hat the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide an individualized hearing prior to re-detaining the parolee." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).

Under the second *Mathews* factor, the procedures used to re-detain Mr. Osorio created a high risk of an erroneous deprivation of liberty interests, and there is probable value in additional safeguards. Mr. Osorio's re-detention appears arbitrary. *See Kumar*, 2025 WL 2677089, at *3 (finding second *Mathews* factor favored petitioner because his re-detention appeared arbitrary). Mr. Osorio was released on an OREC in September 2023 and lived in the community without incident for more than two years. Dkt. # 5 ¶ 4; *see* Dkt. # 1 ¶ 25–26. He has no criminal history in the United States and fully complied with all hearings, filing deadlines, and other requirements. Dkt. # 1 ¶ 25–26. Yet ICE arrested Mr. Osorio without notice and hearing on Christmas Eve in the parking lot of a grocery

store. *Id.* ¶ 3. Respondents have offered inconsistent and unsubstantiated reasons for his re-detention. During his arrest, Respondents stated they were arresting Mr. Osorio because did not properly notify ICE of his change in address. *Id.* ¶ 24. This appears incorrect because Mr. Osorio successfully moved an immigration court to transfer his case to Seattle, Washington, indicating ICE was aware of his relocation. Dkt. # 5 ¶ 6. Respondents now claim Mr. Osorio violated his reporting condition by failing to report since his release in 2023. *Id.* ¶ 2. The OREC, however, gives no indication of when or where Mr. Osorio should report, so it is unclear how Mr. Osorio could have complied with any purported reporting obligation. Dkt. # 6-3 at 2. Additional safeguards, including notice and a meaningful opportunity to be heard before an immigration court, may have decreased the risk of arbitrary or otherwise unlawful detention.

Finally, under the third *Mathews* factor, the government's interest in re-detaining Mr. Osorio without additional procedures is low. The government does not argue Mr. Osorio posed a flight risk, danger to the community, or otherwise required immediate re-detention without procedural safeguards. They also do not argue that additional procedures would have imposed an unreasonable burden on the government. Instead, they state that the government has a strong interest in preventing noncitizens from remaining in the United States in violation of the law. Dkt. # 4 at 8. "Those interests are not threatened if a pre-deprivation hearing is required, however." *E.A. T.-B.*, 795 F. Supp. 3d at 1324.

In sum, the Court finds that all three *Mathews* factors support a finding that Mr. Osorio's re-detention violates procedural due process and require immediate release.

//

//

//

//

//

## V. CONCLUSION

Based on the foregoing, the Court **GRANTS** Mr. Osorio's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court **ORDERS** that Respondents:

(1) Shall immediately release Mr. Osorio from custody;

(2) Shall file with the Court a notice within 2 business days confirming Mr. Osorio's release; and

(3) Shall not re-detain Mr. Osorio unless and until providing him with 10 days' written notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate.

Petitioners may file a fee petition within the deadlines set by the Equal Access to Justice Act. The parties must comply with the Court's meet and confer requirements prior to filing, and the Court takes no position at this time regarding whether such fee petition will be granted.

Dated this 11th day of February, 2026.

The Honorable Richard A. Jones
United States District Judge